# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

No. 23-1165

NATALE COSENZA,

*Plaintiff-Appellant*,

*v.*

CITY OF WORCESTER, MA,

*Defendant-Appellee*,

T.J. COAKLEY; MARK RICHARDSON; ALLAN BURNES; DANIEL BENEDICT; BRIAN DONOHUE; ROBERT TURGEON; DAVID GRADY; DARLENE ROCHEFORD; AS YET UNKNOWN WORCESTER POLICE OFFICERS; KERRY HAZELHURST; JOHN DOHERTY,

*Defendants.*

_____

Appeal from the United States District Court
for the District of Massachusetts,
Case No. 4:18-10936-TSH

_____

## REPLY BRIEF OF PLAINTIFF-APPELLANT NATALE COSENZA
_____

Jon Loevy
Steve Art
Locke Bowman
Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

**June 27, 2024**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................. ii

**INTRODUCTION** ............................................................................... 1

**ARGUMENT** ....................................................................................... 2

   I.  WORCESTER HAS WAIVED ANY ARGUMENT ABOUT ITS FAILURE TO MEET ITS INITIAL BURDEN OF PRODUCTION AT SUMMARY JUDGMENT ................................................................................. 2

      A.   Worcester Has Waived Any Argument On This Issue ...................... 2

      B.   This Court's Standard of Review Does Not Alleviate Worcester's Initial Burden ...................................................................................... 4

   II.  WORCESTER'S ARGUMENTS SHOULD BE REJECTED BECAUSE THEY WERE NEVER RAISED IN THE DISTRICT COURT .................... 7

  III.  THIS COURT SHOULD REJECT WORCESTER'S ARGUMENTS FOR SUMMARY JUDGMENT ...................................................................... 9

      A.   Worcester Improperly Conflates Cosenza's Monell Theories ......... 10

      B.   Worcester Concedes Many Elements of Cosenza's Monell Theories and the Evidence Supporting Them ................................................. 13

      C.   Worcester's Limited Contentions About the Record Illustrate the Need for A Trial ................................................................................ 17

      D.   Worcester's Deliberate Indifference Arguments Lack Merit ........... 21

      E.   Worcester's Causation Arguments Lack Merit ................................ 22

  IV.  WORCESTER'S REFUSAL TO INDEMNIFY ITS OFFICERS HAS IMPORTANT IMPLICATIONS ................................................................ 25

**CONCLUSION** .................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Acosta-Orozco v. Rodriguez-de-Rivera*, 132 F.3d 97 (1st Cir. 1997) ...................... 8

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ................................................. 2, 5

*Air-Con, Inc. v. Daikin Applied Latin Am.*, 21 F.4th 168 (1st Cir. 2021) ................ 3

*Bannon v. Godin*, 99 F.4th 63 (1st Cir. 2024) ........................................................ 24

*Canton v. Harris*, 489 U.S. 378, 389-90 (1989) ................................................... 12

*Carmona v. Toledo*, 215 F.3d 124 (1st Cir. 2000) ................................................. 2, 4

*Celotex v. Catrett*, 477 U.S. 317 (1986) .......................................................... 2, 4, 5

*Cruz v. Bristol-Myers Squibb Co., PR*, 699 F.3d 563 (1st Cir. 2012) .................. 3, 8

*Dugan v. Bd. of Selectmen of Dartmouth*, 602 N.E.2d 563 (Mass. 1992) .............. 25

*Geoffroy v. Winchendon*, 959 F.3d 1 (1st Cir. 2020) ............................................ 15

*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372 (7th Cir. 2017) ............................... 21

*Granfinanciera v. Nordberg*, 492 U.S. 33 (1989) .................................................. 8

*Gray v. Cummings*, 917 F.3d 1 (1st Cir. 2019) ..................................................... 21

*Haley v. Boston* ................................................................. 11, 12, 21, 22

*In re Jackson*, 988 F.3d 583 (1st Cir. 2021) ......................................................... 3

*Johnston v. Holiday Inns*, 595 F.2d 890 (1st Cir. 1979) ........................................ 8

*L.A. v. Heller*, 475 U.S. 796 (1986) ..................................................................... 14

*Lind-Hernandez v. Hosp. Episcopal San Lucas Guayama*, 898 F.3d 99 (1st Cir. 2018) ...................................................................................... 7

*Lopez v. Corporacion Azucarera*, 938 F.2d 1510, 1517 (1st Cir. 1991) ................ 5

*Mack v. Cape Elizabeth Sch. Bd.*, 553 F.2d 720 (1st Cir. 1977) ........................... 5

**TABLE OF AUTHORITIES (cont.)**

**Cases**                                                                    **Page(s)**

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)......................................... passim

*Perry v. Roy*, 782 F.3d 73 (1st Cir. 2015).................................................................10

*Sands v. Ridefilm*, 212 F.3d 657 (1st Cir. 2000).........................................................5

*SBT Holdings v. Westminster*, 547 F.3d 28 (1st Cir. 2008).......................................7

*Stepanischen v. Merchants Despatch Transp.*, 722 F.2d 922 (1st Cir. 1983)...........5

*Tolan v. Cotton*, 572 U.S. 650 (2014).....................................................................10

*U.S. v. Slade*, 980 F.2d 27 (1st Cir. 1992) ................................................................8

*Young v. Providence*, 404 F.3d 4 (1st Cir. 2005)................................. 12, 21, 22, 25

**Statutes**

Mass. Gen. Laws ch. 258, §§ 9, 13 ........................................................................25

**Other Authorities**

Joanna C. Schwartz, *Police Indemnification*, 89 N.Y.U. L. Rev. 885 (2014).........26

**Treatises**

10A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE §2727.1 (4th ed. 2016)
..................................................................................................................................6

# INTRODUCTION

Cosenza's brief explained that reversal is required because Worcester failed to satisfy its initial burden of production in its motion for summary judgment. In its response, Worcester ignores the issue, waiving it. This Court should reverse for that reason alone.

Moreover, the arguments Worcester advances in this Court were never presented below. A party may not defend a judgment on appeal based on arguments that were never made below. This is an independent reason to reverse.

If the Court looks past these issues, it should still reverse and remand for a trial on Cosenza's *Monell* claims. Material disputes of fact require a jury to resolve both of Cosenza's *Monell* theories. Worcester improperly conflates Cosenza's *Monell* theories, largely ignoring Cosenza's policy-omission theory. It does not contest much of the evidence supporting either of Cosenza's *Monell* theories. Where it does discuss the record, it sets out a version of the facts that stretches the record impermissibly in its own favor, ignores evidence, and illustrates that there are disputes for a jury. There is nothing in Worcester's brief that establishes the *absence* of issues of fact that would justify granting Worcester judgment. This Court should reverse and remand for a limited trial on the question whether Worcester's official policies caused the already-established violations of Cosenza's constitutional rights.

# ARGUMENT

## I. WORCESTER HAS WAIVED ANY ARGUMENT ABOUT ITS FAILURE TO MEET ITS INITIAL BURDEN OF PRODUCTION AT SUMMARY JUDGMENT

This Court should reverse because Worcester failed to discharge its initial burden of production as the moving party to demonstrate that there are no genuine issues of material fact for trial. OB-32-36, OB-23-24. In its response, Worcester ignores the argument, relegating it to a footnote. Worcester Br. ("WB") at 23 n.8. In so doing, Worcester has waived the issue. Worcester's conclusory assertion in footnote 8 of its brief that this Court's *de novo* standard of review means it did not need to satisfy its burden of production in the district court is incorrect.

### A. Worcester Has Waived Any Argument On This Issue

As Cosenza explained, OB-32-36, OB-23-24, Rule 56 requires a moving party at summary judgment to satisfy an initial burden of demonstrating there is no genuine dispute of material fact: the movant must either "produce evidence that negates an essential element of the non-moving party's claim," or "point to evidentiary materials already on file—such as answers to interrogatories, affidavits, or portions of depositions—that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." *Carmona v. Toledo*, 215 F.3d 124, 132-33 (1st Cir. 2000) (discussing *Adickes v. S.H. Kress*, 398 U.S. 144, 157 (1970), and *Celotex v. Catrett*, 477 U.S. 317, 325 (1986)). Only once the movant's initial

burden is met does the burden shift to the non-moving party to identify evidence giving rise to genuine disputes of material fact. *Air-Con v. Daikin Applied*, 21 F.4th 168, 177 (1st Cir. 2021).

Worcester did not produce any evidence negating an element of Cosenza's *Monell* claim, nor did it demonstrate that Cosenza lacked evidence supporting his claim. OB-34-36. Instead, Worcester's motion devoted one substantive paragraph to the *Monell* claim, pointing to nothing in the record relating to Cosenza's *Monell* claims and making no argument about the evidence. *Id.* at 23-24, 35. Cosenza's brief set out the cases holding that such an anemic effort is insufficient to shift the burden to the non-movant at summary judgment, that judgment must be denied in such circumstances (even without a response), and that the district court erred in granting Worcester summary judgment for that reason alone, requiring reversal. *Id.* at 32-36.

In response, Worcester does not address these arguments. Instead, in a single sentence of a footnote, Worcester asserts it met its initial burden. OB-23 at n.8. By choosing not to engage, Worcester has waived the point. "The mere mention of a challenge suffices only to waive it." *In re Jackson*, 988 F.3d 583, 590 (1st Cir. 2021); see also *Cruz v. Bristol-Myers Squibb Co., PR*, 699 F.3d 563, 572 (1st Cir. 2012) (arguments "woefully undeveloped" are waived).

Worcester should be held to its waiver. It takes the position that it can file a bare bones motion for summary judgment that does not engage the record at all and

does not meet the initial burden of production, obtain a judgment erroneously, refuse to address its failure to satisfy its burden in response to a claim of error on appeal, and still ask this Court to affirm. This Court should reject that proposition and reverse on this basis alone.

### B. This Court's Standard of Review Does Not Alleviate Worcester's Initial Burden

Even if this Court deems the issue not waived, Worcester's skeletal argument in footnote 8 of its brief is wrong. WB-23 n.8. Worcester asserts that because this Court reviews this appeal *de novo*, such that it can affirm on any independent basis in the record, this Court need not address Worcester's failure to meet its initial burden of production, and it can affirm on what Worcester calls the alternative basis that there are no triable issues of fact. That argument ignores the burden and procedures imposed by Rule 56 and asks for affirmance not on independent, alternative grounds, but instead on the same grounds erroneously relied upon by the district court.

As explained, Rule 56 imposes an initial burden on the movant to produce evidence negating an essential element of the non-movant's claim or to show based on the record that the nonmovant will be unable to carry its burden at trial. *Celotex*, 477 U.S. at 322-25; *Carmona*, 215 F.3d at 132-33. Either of these methods of satisfying this initial burden requires the movant, at minimum, to point to *some*

record evidence or to make *some* argument about evidence, *Celotex*, 477 U.S. at 323, but here Worcester did nothing, OB-32-36, OB-23-24.

Importantly, in these circumstances, summary judgment cannot be granted, and a grant of judgment in should be reversed on appeal. *Adickes*, 398 U.S. at 160-61 (reversing and holding "the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required"); *Lopez v. Corporacion Azucarera*, 938 F.2d 1510, 1517 (1st Cir. 1991) (reversing and holding "[o]nly on a properly supported motion for summary judgment does the burden shift to the nonmovant to establish the existence of a genuine material issue"; *Stepanischen v. Merchants Despatch Transp.*, 722 F.2d 922, 930 (1st Cir. 1983) (same); *Mack v. Cape Elizabeth Sch. Bd.*, 553 F.2d 720, 722 (1st Cir. 1977) (same). These cases ensure Rule 56's procedures are invoked only in appropriate circumstances and that judgments are prematurely entered.

Instead of contending with these precedents, Worcester points to this Court's *de novo* standard of review, WB-23 n.8, which "permits [this Court] to uphold the district court's summary judgment regardless of whether [it] reject[s] or adopt[s] the rationale, so long as an 'independently sufficient ground' is made manifest by the record." *Sands v. Ridefilm*, 212 F.3d 657, 662 (1st Cir. 2000). Worcester contends

this principle permits this Court to decide there is no factual dispute requiring a trial regardless of whether Worcester's failed to discharge its initial burden. Worcester is incorrect.

District courts do not automatically decide in every case whether to allow a trial or dispose of a claim in advance by summary judgment. A party must invoke Rule 56 before a court takes action. The movant, in effect, seeks to halt the progression of the case to trial when it submits that some or all of the matter can be decided summarily. To cut off the right to a trial, the movant must satisfy the requirements of Rule 56. Thus, the first necessary step for summary judgment in this case was to determine whether Worcester satisfied its initial burden of production. Discharging that burden was a necessary prerequisite to the second step, which was to consider whether Cosenza could put forward evidence to establish a genuine dispute of material facts. Those two steps are part of the single analysis required by Rule 56. Worcester did not accomplish step one. The district court therefore should have denied summary judgment and allowed Cosenza's *Monell* claim to proceed to trial. Wright & Miller, *supra*, § 2727.1.

The general rule that an appellee may urge affirmance of a judgment based on any independent alternative grounds supported in the record does not permit a court of appeals to look past an appellant's claimed error and affirm on the same erroneous grounds adopted by a district court, as if the error had not occurred. The alternative

grounds supporting affirmance must actually be independent of the claimed error—it must be an "independently sufficient ground," *SBT Holdings v. Westminster*, 547 F.3d 28, 36 (1st Cir. 2008)—otherwise the appeals court must review the claimed error and determine whether it was an error or not. Here Worcester urges affirmance not on some independent alternative ground unaddressed by the district court, but instead by asking this Court to look past and to thereby sanction the very error that led the district court to improperly grant summary judgment. The standard of review does not permit this approach.

Lastly, even if this were not the case, this Court exercises discretion to affirm on alternative grounds. *Lind-Hernandez v. Hosp. Episcopal San Lucas Guayama*, 898 F.3d 99, 110 (1st Cir. 2018). It should not exercise its discretion here. Worcester argues this Court should affirm a summary judgment in its favor, when Worcester did not attempt to discharge its burden of production in the district court, refuses in this Court to address its failure, and advances arguments in this Court that it never made in the district court. To hold a party can chart this course in litigation would eliminate any incentive to follow the requirements of Rule 56. This Court should reverse because Worcester failed to meet its burden of production.

## II.  WORCESTER'S ARGUMENTS SHOULD BE REJECTED BECAUSE THEY WERE NEVER RAISED IN THE DISTRICT COURT

Unsurprisingly given the above, Worcester arguments in this Court are all new. None of them was presented below. This Court should refuse to consider those new arguments for the first time on appeal and reverse for that reason as well.

It is "axiomatic that an issue not presented to the trial court cannot be raised for the first time on appeal." *Johnston v. Holiday Inns*, 595 F.2d 890, 894 (1st Cir. 1979). "[A] party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court." *U.S. v. Slade*, 980 F.2d 27, 31 (1st Cir. 1992).

A party who obtains summary judgment may not defend that judgment on appeal based on arguments never made below. *Acosta-Orozco v. Rodriguez-de-Rivera*, 132 F.3d 97, 103-04 (1st Cir. 1997) (reversing grant of summary judgment and saying "[t]his [C]ourt does not decide issues on appeal that have not been properly raised before the district court"). While a prevailing party may defend a judgment "on any grounds properly raised below," it may not mount a "defense of the judgment [that] is not one he advanced below." *Granfinanciera v. Nordberg*, 492 U.S. 33, 38-39 (1989).

Worcester's summary judgment motion did not contain any of the arguments included in its response brief. RA-74-76. That motion is just two paragraphs. RA-74-75. The first recites boilerplate legal standards. *Id.* The second is seven sentences, which disjointedly presents arguments not repeated in this appeal. RA-75-76. There

is only a single-sentence assertion in this paragraph of Worcester's summary judgment motion that even remotely resembles any argument Worcester makes in this appeal: "Further, there is nothing more than a single incident, in the administration of the photo array, or at least a single investigation into the August 14, 2000, assault on Ms. Horgan, which cannot support a custom, practice or policy of deliberate indifference." RA-75. The sentence is conclusory and it contains no citation to the record. *Id.*

That is all Worcester said in its summary judgment motion. Nothing Worcester argues in this Court was preserved. This Court should reject Worcester's new arguments and reverse on this basis as well.

## III. THIS COURT SHOULD REJECT WORCESTER'S ARGUMENTS FOR SUMMARY JUDGMENT

If the Court looks past Worcester's waivers and its failure to meet its burden, it should still reverse. Ample factual disputes require a trial on Cosenza's *Monell* theories that the due process violations he suffered were caused by (1) Worcester's omission of needed policies governing the disclosure of evidence, conducting identification procedures, and interviewing victims and witnesses, OB-37-52; and (2) Worcester's failure to train and supervise its officers, including Hazelhurst and Doherty, on these subjects, OB-53-56.

Worcester begins by improperly conflating these two *Monell* theories, treating them as one—as the district court did—when they are different and should be

analyzed separately. Examining the record, Worcester does not elements of Cosenza's *Monell* theories, nor much of the evidence Cosenza advances in support. Where Worcester does engage the record, its discussion emphasizes the need for a trial. Finally, Worcester's limited legal arguments misconstrue and ignore case law.

Worcester "fail[s] to adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justified inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). Courts may not weigh testimony, assess credibility, draw inferences for the movant, or reach conclusions on factual questions. *Perry v. Roy*, 782 F.3d 73, 80-81 (1st Cir. 2015). But Worcester presents a version of events that skews the evidence in its favor, far beyond what the record will bear. Worcester must present this type of factual story to a jury, not to this Court.

### A. Worcester Improperly Conflates Cosenza's *Monell* Theories

Worcester begins its argument (WB-25-26 & n.9), as the district court did (OB-40 n.5), by conflating Cosenza's two *Monell* theories. It incorrectly asserts both theories depend upon the same law and evidence, disregarding in footnotes Cosenza's first theory that Worcester omitted needed policies. WB-25-26 & n.9 (calling it "a red herring"); WB-42 n.12 (dismissing in a footnote all cases on the policy-omission theory, OB-37-40).

While *Monell* theories are necessarily related, they are governed by different legal principles and call upon different proof. Worcester's mashing together of theories means Worcester does not discuss Cosenza's policy-omission *Monell* theory in any detail, it ignores the law governing that theory, it does not separately discuss the evidence that requires a trial on that theory, and it does not contend with differences between the theories. Worcester reduces nearly its entire response brief to a discussion of failure-to-train claims and the law governing such claims. WB-28-42. Its decision not to engage the policy-omission theory separately represents yet another failure to demonstrate the absence of genuine disputes of fact, another waiver, and another reason to reverse. Arguments I-II *supra*.

This Court recognized in *Haley v. Boston* that Cosenza's two *Monell* theories are distinct and require different showings. 657 F.3d 39, 51-52 (1st Cir. 2011. As in *Haley*, the municipal failure to enact needed policies renders a municipality liable on a theory that "implicates the standing policy itself," such that "a particular municipal action itself violates federal law." *Id.* at 51-52; OB-37-40 (collecting cases). This theory exists on the branch of *Monell* that authorizes municipal liability where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658, 690 (1978). Cosenza must show Worcester failed to adopt a policy that it had notice it needed. *Haley*, 657 F.3d at 51-52.

Contrast the theory that a municipality is liable for failing to train or supervise officers. That *Monell* theory requires proof that the municipality knew or should have known its training or supervision was inadequate in an area, risking the violation of constitutional rights, but that the municipality disregarded that risk by failing to implement a better or different training program. *Young v. Providence*, 404 F.3d 4, 25-29 (1st Cir. 2005). Under this theory, a municipality's disregard of risk is demonstrated by a prior pattern of similar constitutional violations or because it was obvious the failure to train or supervise was likely to cause constitutional violations. *Id.* at 28-29.

While the proof supporting the theories necessarily overlaps, the distinctions between them affect the analysis.[1] As with all *Monell* theories, both theories require evidence that the municipal policy caused a constitutional violation. *Haley*, 657 F.3d at 51. Proof of deliberate indifference is required. *Canton v. Harris*, 489 U.S. 378, 389-90 (1989). But the question is *how* a party proves that indifference. Where a municipality enacts a policy that causes a constitutional violation, the enactment of

---

[1] That is why federal civil pattern jury instructions separate instructions governing a failure-to-train/supervise theory from the other *Monell* theories, including a policy-omission theory. Compare CA7 Civil Instruction 7.24 with 7.25, https://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf. Or CA3 Civil Instruction 4.6.3 & 4.6.4 with 4.6.7, https://www.ca3.uscourts.gov/sites/ca3/files/4_Chap_4_Deecember_2023.pdf.

the policy is itself the evidence of indifference. Where a municipality promulgates policy but omits needed policies, the policymaker's omission in the face of notice the policy is needed is the evidence of indifference. And where a municipality fails to train or supervise officers, a pattern of constitutional violations or the obviousness of the need for more training is the evidence of indifference.

This Court should consider Cosenza's *Monell* theories separately. Material disputes of fact in the record require a trial on each theory.[2]

## B.    Worcester Concedes Many Elements of Cosenza's *Monell* Theories and the Evidence Supporting Them

With the legal standards clarified, Worcester's brief demonstrates Worcester's liability must be decided at trial. Worcester does not contest some elements of Cosenza's *Monell* theories. It concedes the evidence supporting others. And it does not address still other evidence creating disputes for trial. These concessions confirm that the record supporting Cosenza's *Monell* theories is one-sided, and that Worcester cannot hope to establish an absence of disputes.

---

[2] Worcester misleadingly quotes Cosenza's *complaint*, contending Cosenza advocates a *respondeat superior* standard. WB-27; WB-38; WB-47. Cosenza has never done so. The pa complaint Worcester cites pleads Worcester is liable for *state-law torts* via *respondeat superior*, and that it is "*additionally responsible* for the policies and practices of the Worcester Police Department, which were implement by Defendants in this case," RA-4965.

## 1. Worcester Concedes Cosenza's Right to Due Process Was Violated, Causing His Wrongful Conviction

To prove both of his *Monell* theories, Cosenza must show his constitutional rights were violated. *L.A. v. Heller*, 475 U.S. 796, 799-800 (1986). A municipality typically argues at summary judgment that no such violation occurred. But Worcester does not dispute that a jury has already decided Cosenza's right to due process was violated, or that those violations caused his conviction. OB-25-30. Nor does Worcester contest the particular facts establishing those due process violations–namely, that Hazelhurst suppressed evidence that he bolstered Horgan's identification, OB-48; OB-13-18; Hazelhurst fabricated and suppressed evidence that the perpetrator left semen-covered shorts at the scene, OB-48; OB-18-20; Hazelhurst and Doherty conducted unduly suggestive identification procedures, OB-49-51; OB-13-17; and Hazelhurst and Doherty conspired to fabricate and suppress evidence to frame Cosenza, OB-48-49. Accordingly, Worcester does not contest Cosenza suffered constitutional violations, the nature of the particular due process violations, or that those violations caused his wrongful conviction.[3]

---

[3] In its motion to strike and brief, Worcester argues the record at summary judgment governs this Court's review of the district court's decision. WB-4 & n.4; WB-20-21 & n.7. As Cosenza said in response to the motion to strike, Cosenza generally agrees. Cosenza's discussion of the *Monell* theories cites exclusively to the summary judgment record. OB-22-25, OB-40-56.

But that does not mean the trial record is *irrelevant*. For instance, had Worcester raised a challenge on appeal to the nature of the due process violations Cosenza suffered, it may have been relevant to review the verdict and judgment. But Worcester has conceded those issues, so that is not necessary. Still, what occurred at trial is relevant because, if this Court reverses, what happens on remand is impacted by the first trial. OB-57. This Court may consider the summary judgment

## 2. Worcester Concedes It Had No Written Policies, No Customs, and No Training On Relevant Subjects

Highly relevant to both of Cosenza's *Monell* theories, Worcester also does not dispute much of Cosenza's evidence that it had no written policies whatsoever, no customs having the force of policy, and no training program requiring officers to disclose evidence to prosecutors, governing identification procedures, or instructing officers how to interview victims and other witnesses. OB-41-43 (record evidence of absent policies); OB-53-56 (training). Worcester expressly states it agrees it had no written policies governing identification procedures or witness interviews. WB-45 ("It is acknowledged that . . . the City had no written policies in place regarding witness interviews and identifications.").[4]

Moreover, although Worcester does not expressly concede it had no written policies, customs, or training requiring officers to disclose evidence to prosecutors, it does not mention the subject or Cosenza's evidence supporting it *once* in its brief.[5] Worcester therefore leaves that evidence uncontested. See OB-41-42, OB-54.[6]

---

record for purposes of reviewing summary judgment, and the trial record for other purposes. *Geoffroy v. Winchendon*, 959 F.3d 1, 3 (1st Cir. 2020).

[4] The concession contradicts Worcester's assertion that the claim it "had no policies whatsoever regarding identifications, taking witness statements, and handling evidence, has *no support in the record*," WB-35.

[5] Four passages in Worcester's response contain discussion of the record, and none mentions policies, customs, or training governing disclosure of evidence. WB-5-8; WB-36-37; WB-40-41; WB-45-47.

[6] Cosenza discusses below what Worcester dubs its "preferred practices," but two points are worth making here. First, Worcester does not contend in its brief it had a so-called "preferred practices" governing disclosure of evidence to prosecutors. Second, Worcester's Rule 30(b)(6)

Cosenza said in his opening brief that Worcester would not be able to point to any actually written policy, OB-43, and as expected, Worcester has not, WB-5-8; WB-36-37; WB-40-41; WB-45-47. Instead, Worcester repeatedly emphasizes immaterial testimony about what it calls an 800- to 900-page policy manual, WB-6; WB-36-37, and testimony about a supposed written policy that Worcester says "required witness interviews be documented in a written report within fifteen days of the interview." WB-8; WB-45-46.[7]

Finally, in response to Cosenza's evidence that Worcester provided no training on disclosing evidence to prosecutors, eyewitness identification procedures, or interviewing witnesses and victims, OB-53-56, Worcester only discusses training on conducting identifications in its brief, WB-5; WB-36. It does not cite any record

---

witness testified "preferred practices" are not unwritten policies or customs carrying the force of policy. *E.g.*, RA-1688 at 43:1-7; RA-1698 at 84:6-13; RA-1688 at 43:8-17.

[7] The cited testimony is immaterial because, these purported written materials have nothing to do with the *Monell* issues. Importantly, Worcester does not contest that its own Rule 30(b)(6) witness admitted the policy manual did not set out any policy on the issues relevant here–the disclosure of evidence, identification procedures, or interviewing witnesses. OB-43. Worcester mentions the manual repeatedly, without acknowledging it did not cover the relevant subjects. WB-6; WB-36-37.

The same is true of the supposed report-writing policy, about which Worcester's Rule 30(b)(6) witness could only say in "very, very general terms" it required officers to write a report, and "[he] believe[d] back then the report was to be submitted within 15 days." RA-1694-95 at 67:21-70:18. Contrary to Worcester's assertion that the policy "required witness interviews be documented in a written report within fifteen days of the interview," WB-8, the witness testified, "I *don't* think there's a line in the policy that states specifically that all interviews must be memorialized," RA-1695 at 70:16-18.

Because none of these unproduced written policies required the disclosure of evidence, governed identification procedures, or set guidelines for interviewing witnesses and victims, Worcester's citations to its policy manual and report-writing policy are immaterial. They do not establish the *absence* of disputes of fact. At minimum, they *create* disputes. At trial, they will support Cosenza's position that Worcester lacked needed policies.

evidence that it provided training on evidence disclosure or witness interviews, WB-5-8; WB-36-37; WB-40-41; WB-45-47, conceding that there was no such training.[8]

* * *

Worcester does not contest Cosenza's right to due process was violated by the fabrication and suppression of evidence and unduly suggestive identification procedures. It does not contest these violations caused Cosenza's conviction. It does not say anything about policies, customs, or training on evidence disclosure. It does say anything about training on witness interviews. It concedes there were no written policies on eyewitness identifications or witness interviews. And it concedes that there were no binding customs on any topic. In combination with what a jury has already decided, these concessions alone justify a jury trial.

## C. Worcester's Limited Contentions About the Record Illustrate the Need for A Trial

That conclusion is confirmed on examination of factual arguments Worcester does make. Far from establishing the absence of disputed facts, Worcester's contentions establish that there is much for a jury to resolve.

On written policies, Worcester references an unproduced policy manual repeatedly, as discussed above, without mentioning that binding testimony establishes that the policy did not cover any of the relevant subjects. See note 8

---

[8] Worcester similarly does not address that its Rule 30(b)(6) witness testified that he himself was not trained in evidence disclosure or interviewing witnesses and victims. OB-54.

*supra*. It invokes another supposed policy it says required timely documentation of witness interviews, WB-8, ignoring that the testimony establishes that this policy did *not* require documentation of witness interviews, see note 8 *supra*.

Acknowledging it has no actual written policies to point to, it invokes so-called "preferred practices" throughout its response, WB-6-8, WB-36-38, suggesting twice that this Court might consider these practice binding, unwritten policies, see WB-7 n.5; WB-36 n.10. What Worcester does not mention is that its Rule 30(b)(6) witness was unequivocal that "preferred practices" were *not* unwritten policies or customs carrying the force of policy, RA-1688 at 43:1-7, they were not binding, *id.*, they were not at the level of unwritten policies, RA-1698 at 84:6-13, they were not required, RA-1688 at 43:8-17, they varied among officers, RA-1688 at 44:1-7; RA-1689 at 46:23-47:4, and they were "common sense." RA-1701 at 97:1-17; RA-1713 at 142:14-17.[9] Worcester's suggestion that preferred practices, whatever they were, had force is directly contradicted in the record, and, most charitably to Worcester, its suggestion inverts the summary judgment standard.

Moreover, while Worcester suggests generally that it had preferred practices on identification procedures, WB-7, and witness interviews, WB-8, the Rule 30(b)(6) witness testified there were no preferred practices on a great number of

---

[9] Worcester suggests Cosenza's expert agrees preferred practices were binding, WB-36 n.10; WB-37, but Cosenza's expert opined the opposite: the non-binding practices and absence of binding policies perpetuated misconduct, Argument III(E) *infra*.

subjects relating to identification procedures and witness interviews.[10] After setting out its thin evidence regarding practices, Worcester pronounces that "this is not the same as having no . . . policies whatsoever." WB-37. But that is part of the factual dispute: A jury could conclude based on the evidence just discussed that Worcester had no policies whatsoever.

On training, Worcester's evidence is similarly illusory and raises similar factual disputes. Recall Worcester only discusses training on identifications, and not on evidence disclosure or witness interviews. Argument III(B)(2) *supra*. There is no contention that it trained at all on two of the relevant subjects. On identification procedures, the evidence cited by Worcester does not support its contention that it provided training. WB-5; WB-36. The record cited discusses training provided in the police academy *starting in 2004*, not back between 1995 and 2000, leading up to Cosenza's prosecution. RA-1682. In fact, Worcester's witness confirmed that there "wasn't a lot of guidance" on identifications in 1994, when he was trained. *Id.*

---

[10] There were no preferred practices on what information could be communicated to witnesses in an investigation, RA-1691; what information had to be reported about witness interviews or identification procedures, RA-1694; under what circumstances an officer should conduct a photo array, RA-1701; whether a witness should be interviewed before conducting a photo array, id.; how fillers should be selected, RA-1702; what instructions should be given before an array, RA-1706; whether an array should be conducted without a suspect, RA-1702; whether officers should conduct lineups, RA-1706; what constituted unnecessarily suggestive identification procedures, RA-1709; whether officers could provide the witness information about the person they identified, RA-1709-1710. The list goes on and on.

There is a similar training misrepresentation in Worcester's suggestion that training officers went through a copy of the policy manual new officers. WB-6, WB-36-37. The Rule 30(b)(6) deponent did not provide testimony supporting this. Instead, he testified "We weren't required. Nobody ever told us sit down and read each and every policy." RA-1690 at 53:1-14. In short, Worcester takes significant liberties with the record, going beyond construing that record in favor of the moving party, and even in the limited areas where Worcester contends it provided training, a jury could find it did not.

Finally, on the subject of Worcester's notice of the need for relevant binding policies and training to govern police conduct, Worcester contends that the only evidence that Cosenza relies upon is "the broad statements of his police practices expert." WB-40. But that is just not true. Cosenza pointed to establish cases demonstrating the need for policies, OB-44, a representative of the District Attorney's office, *id.*, model national standards, OB-45, U.S. Department of Justice guidelines, *id.* the Law Enforcement Code of Ethics, *id.*, Worcester's own admissions in its Rule 30(b)(6) deposition, OB-46, and Worcester's own expert's testimony, OB-46-47. Worcester does not respond to any of this, wishing it away. Moreover, Cosenza's expert testimony is detailed and credible, it would alone be sufficient to survive summary judgment, OB-44-46, and though Worcester asserts that it is unsupported, WB-40, there was no *Daubert* challenge at summary

judgment, and district judge in the first trial admitted the expert testimony against the officers, over objection. Just as there are disputes of fact on the material issues above, there are ample disputes about whether Worcester had notice of the need for policies and training.

Worcester's arguments about the record highlight that a jury must resolve the material factual disputes. Worcester comes nowhere close to establishing that judgment as a matter of law is warranted.

## D.    Worcester's Deliberate Indifference Arguments Lack Merit

The combination of conceded evidence and factual disputes are more than enough to put a jury the question of Worcester's indifference to its need to implement police policies on evidence disclosure, identification procedures, and witness interviews, and to enact better training programs on those subjects. Indeed, Worcester does not even discuss the absence of policies and training on a number of these subjects. This is enough to get to a jury on the question of deliberate indifference. *Haley*, 657 F.3d at 51-53; *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017); *Young*, 404 F.3d at 26.

Worcester compares this case to *Gray v. Cummings*, 917 F.3d 1, 14 (1st Cir. 2019), WB-30-31, where this Court decided an expert report on police produced for interacting with disabled individuals coupled with an incident was not alone enough to survive summary judgment on a *Monell* claim. Cosenza does not rely on a single

expert report. He has assembled a mass of evidence, much of it undisputed, that Worcester omitted all relevant policies it knew it needed and had no training program in place. This case and Gray are not remotely comparable.

As discussed in Cosenza's opening brief, this case is analogous to Haley, where this Court blessed a nearly identical Monell theory, and Young where this Court permitted a claim to proceed to trial on less of an evidentiary record. *Haley*, 657 F.3d at 51-53; *Young*, 404 F.3d at 26. This Court should reject Worcester's assertion that the legal claims in this case do not fit well within existing case law.

### E.    Worcester's Causation Arguments Lack Merit

Lastly, Worcester asserts the constitutional violations Cosenza suffered were caused not by its omission of policies or failure to train and supervise, but instead by a rogue officer, who Worcester contends violated written policy and preferred practice. WB-44-47. The argument fails for many reasons.

For starters, Worcester only points to two examples of Hazelhurst running afoul of what it asserts was policy: (1) his failure to submit a report on the shorts within 15 days, and (2) his failure to follow three preferred practices during the Horgan identification procedure. WB-46. Those two examples, even if believed, address at best a fraction of the due process violations, policy omissions, and

training/supervision failures at issue.[11] These examples certainly do not justify judgment as a matter of law on the question of causation across the board.[12]

Moreover, the question whether an officer was following or disobeying policy is plainly a question of fact for a jury and not one this Court can decide as a matter of law. Worcester cannot construe the evidence in its favor and then ask for summary judgment on causation. And myriad disputes of fact are implicated by the limited arguments Worcester makes about Hazelhurst's supposed violations, including but not limited to whether Worcester even had any of the supposed policies that it says Hazelhurst violated.[13]

Worcester points to part of Cosenza's expert report, but that expert report does not support it. While Waller observed that Worcester's officers departed from what

---

[11] Worcester's contentions about Hazelhurst really have nothing to do with the constitutional violations in question. For example, Hazelhurst's failure to timely write a report is unimportant to his fabrication of a false story about the shorts and his suppression of the truth. OB-18-20. Hazelhurst fabricated that evidence long after the fact, wrote a false report, and then suppressed the truth throughout the prosecution. A reasonable jury could decide it was Worcester's utter lack of evidence disclosure policies, customs, and training that caused that conduct.

[12] For instance, Worcester cannot demonstrate an absence of disputes on the theory that it omitted policies and failed to train its officers on disclosing evidence, when Worcester does not even discuss that subject. Argument III(B)(2) *supra*. Cosenza's rights were violated when forensic evidence and witness evidence was fabricated and suppressed, which Worcester does not contest. Argument III(B)(1) *supra*. Worcester points to nothing establishing an absence of disputes about whether those violations were caused by Worcester's omitted policies and lack of training/supervision on evidence disclosure.

[13] For example, Worcester's written policy on report writing did not require documentation of witness interviews, note 8 *supra*, so did Hazelhurst violate it? Worcester's Rule 30(b)(6) witness said there were no preferred practices on many aspects of identification procedures, RA-1701-05, and so precisely what did Hazelhurst not follow? Even so, preferred practices were not binding, had no force, and varied over time, note 7 *supra*, and so even if there had been a practice, was Hazelhurst bound to follow it?

Worcester called preferred practices, RA-1457-58, one of Waller's central opinions was that the problem caused by relying on so-called preferred practices "without having formal policies, procedures, and training to ensure appropriateness and consistency is that if what is taught is contrary, incompatible with, or does not address nationally accepted standards of law enforcement practice, that manner of inappropriate conduct may be perpetuated. Such was the case with the Worcester Police Department in 2000." *Id.* Waller's point was that the preferred practices left room for misconduct, not that the officers violated preferred practices. *Id.*

Finally, Worcester cites *Bannon v. Godin*, 99 F.4th 63, 88-89 (1st Cir. 2024), in support of its causation argument. That case held that Boston was not liable for failing to train officers on the use of precision immobilization technique (PIT) to stop a suspect's vehicle. This Court found decisive that the BPD's written policies expressly forbid PIT maneuvers, the Rule 30(b)(6) witness testified that all recruits were trained not to use PIT maneuvers, and an involved officer confirmed he was trained not to use PIT maneuvers and knew they were prohibited. *Id.* This case is precisely the opposite of *Bannon* on every relevant point: there were no relevant policies, and there was no training, which the involved officers confirmed. Unlike *Bannon*, a reasonable jury could conclude Worcester's official policies caused the violation of Cosenza's right to due process.

Worcester says there is "nothing in the summary judgment record" from which a reasonable jury could conclude that its omitted policies and failure to train/supervise caused the violations of Cosenza's constitutional rights that all agree occurred. WB-45. On the contrary, there is ample evidence, even uncontested evidence, that municipal policies and training were deficient in precisely the same subjects that led to the evidence suppressions and fabrications and suggestive lineup procedures that violated Cosenza's right to due process. Indeed, there is much more here than in other cases where this Court has sent the question of causation to the jury. *Young*, 404 F.3d at 29-30. Causation is fundamentally a question of fact for a jury, and this Court should send that question to the jury on remand.

## IV. WORCESTER'S REFUSAL TO INDEMNIFY ITS OFFICERS MATTERS

Worcester contends it has not acted in bad faith in refusing to indemnify the judgment against its officers, that such an approach is authorized by Massachusetts law, and that the issue is irrelevant. WB-38-39 n.11. Worcester is wrong on all three points. The first two are the subject of ongoing litigation not before this Court, but Massachusetts law requires indemnification of officers, Mass. Gen. Laws ch. 258, §§ 9, 13; *Dugan v. Dartmouth*, 602 N.E.2d 563, 566 (Mass. 1992), and particularly where a municipality induces officers to proceed to trial instead of settling.

On the third point, Cosenza concedes Worcester's non-indemnification does not bear on summary judgment. But its litigation conduct remains important.

Usually, municipalities stand behind and indemnify officers. Schwartz, *Police Indemnification*, 89 NYU.L.Rev. 885, 912-927 (2014). This regime means *Monell* claims are often less important in a § 1983 cases. But here, where Worcester has abandoned its officers, *Monell* claims may be the only way Cosenza secures redress.

## CONCLUSION

Disputes of fact require a trial on whether Worcester's policy omissions and failures to train and supervise caused the violations of Cosenza's constitutional rights already determined by a jury. Worcester failed to satisfy its initial burden at summary, waived any contrary argument on appeal, and only presents appeal arguments it never presented below. For all of these reasons, this Court should reverse and remand for a limited trial on whether Worcester caused the violation of Cosenza's constitutional rights.

RESPECTFULLY SUBMITTED,

**NATALE COSENZA**

/s/ Steve Art
*Counsel for Natale Cosenza*

Jon Loevy
Steve Art
Locke Bowman
Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900

[steve@loevy.com](mailto:steve@loevy.com)

**June 27, 2024**

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)(B)(i)

I, Steve Art, hereby certify, pursuant to Federal Rule of Appellate Procedure 32(g)(1), that the foregoing Brief of Plaintiff-Appellant Natale Cosenza complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 6,442 words, excluding those portions of the brief listed in Federal Rule of Appellate Procedure 32(f) that do not count toward the word limitation. I relied on the word-count feature in Microsoft Office 365.

/s/ Steve Art
*Counsel for Natale Cosenza*

Jon Loevy
Steve Art
Locke Bowman
Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

**CERTIFICATE OF SERVICE**

I, Steven Art, hereby certify that I served the Brief of Plaintiff-Appellant Natale Cosenza on June 27, 2024, using the Court's CM/ECF system, which effected service on all counsel of record for the Defendant-Appellee.

 /s/ Steve Art
*Counsel for Natale Cosenza*

Jon Loevy
Steve Art
Locke Bowman
Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
steve@loevy.com